Maynard Paul MONNETTE and Robert
Christianson Noreng, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 18775.

United States Court of Appeals
Fifth Circuit.

Feb. 26, 1962.

Dean Boggs, Lucien H. Boggs, J. Donald Bruce, Jacksonville, Fla., Lanas Troxler, Coakley Taylor, Jacksonville, Fla., of counsel, for appellants.

Earl M. Johnson, Jacksonville, Fla., Constance Baker Motley, New York City, for appellees.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

Jos. P. Manners, Manners & Amoon, Miami, Fla., for appellants.

Robert W. Rust, Edmond J. Gong, Lavinia L. Redd, Asst. U. S. Attys., Edward F. Boardman, U. S. Atty., Miami, Fla., for appellee.

Before JONES and BELL, Circuit Judges and SIMPSON, District Judge.

SIMPSON, District Judge.

Monnette and Noreng, Appellants, were tried before a jury, convicted and sentenced upon Counts 1 and 4 of a 5-count indictment[1] charging violation of the Internal Revenue Code with respect to non-tax paid distilled spirits, or "moonshine". Count 1 charged that they had under their control unregistered distilling apparatus (Sec. 5179(a) and 5601 (a) (1), Title 26 U.S.Code) and Count 4 charged possession of 105 gallons non-tax paid whiskey (Secs. 5205(a) and 5604(a) (1), Title 26 U.S.Code).

Two points are urged for reversal, (1) that the Government's evidence was obtained by illegal search, and (2) that the evidence was insufficient to sustain a conviction as to either of the defendants. We affirm.

Monnette owned residential premises at 16200 N.W. 39th Place, Miami, Florida. On February 22, 1960, State Beverage Agents Hillidge and Kendall were patrolling in the northwest section of Miami, searching for an unregistered still reported in that area. The agents observed a 1950 Plymouth automobile parked in front of Monnette's building. Agent Kendall recognized the car as belonging to a suspected liquor violator, Tony Zamper. Further investigation revealed that the car was in fact owned by Zamper, and was being used by Robert Noreng, another suspected violator who had been seen by Agent Hillidge at another unregistered still four months earlier.

---

1. Count 2, at the suggestion of the Court, was dismissed prior to trial. Counts 3 and 5 were submitted to the jury, but each defendant was acquitted thereunder. Count 3 charged making and fermenting of mash fit for distillation of distilled spirits in violation of Sections 5222 and 5601(a) (7), Title 26, U.S.Code, while Count 5 charged concealment with intent to defeat and evade payment of taxes, of the 105 gallons of non-tax paid whiskey in violation of Sec. 7206(4), Title 26, U.S.Code.

On the next day, February 23, agent Hillidge returned to the premises, accompanied by State Agent Russell. They sat in the car, from where agent Russell testified he could smell the odor of mash emanating from the building. Agent Hillidge, not immediately detecting the odor, went inside the fence and finally up to the front porch, from where he clearly detected the odor of mash. Three agents returned that evening. Again smelling the mash odor, they went upon the lot surrounding the house and looked through the back window.

The next day, February 24, Agent Hillidge went before a U. S. Commissioner and made an affidavit for issuance of a search warrant of the premises at 16200 N.W. 39th Place, Miami, Florida, setting forth as facts establishing grounds for issuance that he had information that a still was operated thereon, that a car used by a known liquor law violator was observed parked in front of the premises, and that he had smelled the odor of fermenting mash emanating from the building.

On the basis of this affidavit, the Commissioner issued the requested search warrant, directed to Federal investigators. A team of Federal and State agents kept the premises under surveillance during the next day, February 25. They observed Monnette arrive and remain briefly at about 8 A.M. After he left, the premises were empty until about 3 P.M. when Noreng arrived, also remained only briefly, and then drove away. Monnette and Noreng returned together at about 4:30 P.M., parking in the carport adjacent to the house.

The agents observed them carrying objects into the house and then observed Noreng working on a piece of apparatus, which was not identifiable from where the agents were posted but which later proved to be a charcoal filter of the type used in a distilling operation.

At about 5 P.M. a group of agents drove through an empty lot and on to Monnette's property. On seeing the cars, Monnette and Noreng took flight, chased by the agents. Federal Agent Schurr then served the search warrant on the unoccupied premises. His search revealed a distilling apparatus which was set up in both bedrooms and the bathroom of the house. A complete search also revealed about one hundred gallons of moonshine whiskey and a quantity of fermenting mash.

Both Monnette and Noreng were caught within a few blocks of the house and taken into custody. Their indictment, trial, and conviction followed.

Prior to the trial, appellants moved to suppress the evidence obtained by the agent in their search of Monnette's building, on the ground that the search warrant was issued without probable cause and therefore invalid. Monnette, claiming ownership of the premises, had standing to raise this question. Noreng, charged with possession of property found within the premises also had standing.[2] Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

Agent Hillidge, in his affidavit, set out facts sufficient to justify the issuance of a search warrant.[3] A warrant

---

2. At the hearing on motion to suppress, counsel for the Government recognized Appellants' right to raise this issue. (Tr. pg. 69–70).

3. "I am an enforcement agent with the Florida State Beverage Department. On February 20, 1960, I received information that an unregistered distillery was being concealed and operated on the premises at 16200 Northwest 39th Place, Miami, Dade County, Florida. At about 5:30 P.M. on February 22, 1960, I observed a 1960 Plymouth bearing a 1960 Florida Tag # 1–137576 on the above premises. This Plymouth was known to me to be used by Robert Noreng, a known liquor law violator, for the distribution of illicit liquor in the Dade County area. At about 8:00 PM on February 23, 1960, while making an investigation and observation of the above described premises, I distinctly smelled the odor of fermenting mash emanating from these premises. NORMAN R. HILLIDGE."

may be issued upon "probable cause". That phrase has no inflexible meaning but it has been generally stated that there is probable cause when the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense is being committed in the place to be searched. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Trustworthy information, although technical hearsay, may furnish probable cause,[4] Brinegar v. United States, 338 U.S. 160, 172–173, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Draper v. United States, 358 U.S. 307, 311–313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Giacona v. United States, 257 F.2d 450 (5 C.A.1958, cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104). Agent Hillidge had personal knowledge that Noreng was a suspected liquor law violator after finding him at an unregistered still four months earlier. The information obtained from other agents that the 1950 Plymouth parked in front of Monnette's building was operated by Noreng was hearsay but trustworthy information and entitled to weight when the issue was not guilt but probable cause.[5] The odor of mash emanating from the premises was a very strong factor in showing probable cause. This distinctive odor alone has been held to furnish probable cause for a search of the building from which the odor rises, McBride v. United States, 284 F. 416 (5 C.A.1922), cert. den. 261 U.S. 614, 43 S.Ct. 359, 67 L.Ed. 827, or at least to justify the issuance of a warrant to search that building, Johnson v. U. S., 333 U.S. 10, 13 (1948), Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 45 (1961). The Johnson and Chapman cases condemned the hasty action of officers who invaded premises immediately after detecting the odor of narcotics in Johnson and an odor of mash in Chapman. The Court indicated that after detecting the odor, the proper procedure was to obtain a search warrant. This was the procedure followed by agent Hillidge. The U. S. Commissioner, a judicial magistrate, weighed and determined whether there was probable cause, Townsend v. United States, 253 F.2d 461, 465 (5 C.A.1958). It is argued that Agent Hillidge detected the mash odor only after an illegal search and the facts learned through an illegal search cannot justify the issuance of a valid search warrant. Agent Hillidge did go on the property of Monnette before he could definitely identify the mash odor. It is well settled, however, that a trespass upon the grounds surrounding a building does not constitute an illegal search. The protection of the Fourth Amendment does not extend to the grounds. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), Martin v. United States, 155 F.2d 503 (5 C.A.1946).

After strongly detecting the odor while standing near Monnette's property line, the agents did go up to the house and peer through the rear windows in an attempt to find further evidence. If the house was in fact the dwelling of Monnette, this peering into the dwelling was a trespass certainly and probably violat-

4. The dictum in Grau v. United States, 287 U.S. 124, 128, 53 S.Ct. 38, 77 L.Ed. 212 (1932) implying otherwise has been expressly disapproved in the Brinegar and Draper cases.

5. The testimony of Agent Hillidge concerning his information was stricken by the trial judge when elicited before the jury on the issue of guilt. (Tr. Pgs. 82–83):
(The car in question was referred to in testimony by Hillidge and Russell as

a 1950 Plymouth. Apparently the reference to a 1960 Plymouth in Hillidge's affidavit (Foot Note 3) is a typographical error, either in the typing of the affidavit, or (more probably) in setting type for the printed transcript. At any ra' , the references are to the same car and no note was taken by Counsel below or on appeal of the discrepancy, if it exists. This opinion refers to the car as a 1950 Plymouth.)

ed his right to privacy [6] as well. Neither of these questions need concern us here, however, for the agents discovered nothing from their look into the house. The odor had been distinctly noticed and identified at the property line. The facts which established probable cause, as set out in Agent Hillidge's affidavit were not obtained by what might have been an illegal act.

We conclude: That the affidavit was sufficient; that the search warrant was valid; that the ensuing search of the premises was legal; and that the motion to suppress was properly denied by the District Judge.

When the agents drove into the yard surrounding Monnette's house, both appellants took flight, were chased, and finally caught. They were taken into custody and brought back to the house where the agents searched their persons. The agents did not have arrest warrants for the two men but had probable cause to believe that an offense had been committed, justifying the arrests without arrest warrants. Brinegar v. United States, supra, 338 U.S. page 164, 69 S. Ct. page 1302.

The agents had probable cause to believe that the premises contained an unregistered still. Both appellants had been observed during the day going to and from the premises. Appellants' flight from the scene was a further indication that they were involved. Flight from law officers is evidence of guilt. Kimes v. United States, 242 F.2d 99 (C. A. 5, 1957) cert. den. 354 U.S. 912, 77 S.Ct. 1299, 1 L.Ed.2d 1429, Corbin v. United States, 253 F.2d 646 (10 C.A. 1958).

Appellants contend in their brief that flight was motivated by fear of being run down when the agents drove into the yard.

After reviewing the testimony, we conclude that their flight is more reasonably explained by appellants' guilty knowledge than by their fear of being run down.[7]

These circumstances gave probable cause for arrest and the search of appellants' persons was carried out incident to this arrest.

Finally, appellants contend that there was insufficient evidence to sustain the jury's verdict. "In considering whether there is sufficient evidence to sustain a conviction, the evidence will be viewed in the light most favorable to the Government". Teate v. United States, (No. 18832, 5 C.A. December 13, 1961) 297 F.2d 120; Chastain v. United States, 237 F.2d 422 (5 C.A.1956). Monnette was the admitted owner of the premises. The unexplained presence of the still and the liquor is enough to show his possession of them. Teate v. United States, supra. Noreng was observed working around the still, cleaning what proved to be a piece of still equipment. In addition, the jury could consider appellants' flight as evidence of guilt. The evidence viewed as a whole is sufficient basis for the guilty verdicts as to each defendant.

Each of the two grounds urged for reversal is found to be without merit as to either appellant. The record is free from prejudicial error.

Affirmed.

---

6. It is doubtful that the house was in fact a dwelling place. The search of February 25 revealed the still occupied the only two bedrooms and the bathroom. This left little living space. Although suited for residential use, the building was apparently no more than the site of an unregistered distillery, and, if anything, a business establishment not entitled to the same degree of privacy as a bona fide dwelling place. Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed.2d 1453 (1946).

7. Appellants took flight when the cars were still more than one hundred feet away from them. They did not merely move out of the path but ran from the area, not stopping until either apprehended by a pursuing agent or out of breath.