George Tilzer, J.
Police Officer Miltenberg testified to having had the defendants’ candy store under observation. On the following day, April 13, 1962, at about 8:00 p.m., the officer gained access through an adjoining building to the rear yard of the. building housing the candy store. He then climbed to the roof of a structure located behind the candy store and separated from the store premises by some two feet. The officer placed the base of a ladder on the structure and leaned the top of the ladder against the outer wall of the store. From this position he could look through an open window into the rear room of the defendants’ store. While thus standing on the ladder, Miltenberg observed and overheard four men place bets upon the results of horse races with each of the defendants. The officer then entered the premises and placed the defendants under arrest.
*14 It is unnecessary to detail the further circumstances of what transpired in the store premises, since if the police officer’s evidence of what he saw and heard from his vantage point was unlawfully obtained, it was properly suppressed and the subsequent arrest and search were both unlawful. Evidence discovered as the result of an unreasonable governmental intrusion “ is now constitutionally tainted and inadmissible in a State court ” as the result of Mapp v. Ohio (367 U. S. 643). (People v. Loria, 10 N Y 2d 368, 372.) On the other hand if the evidence was lawfully obtained, not only is it admissible, but the subsequent arrest (based on the commission of a misdemeanor in the officer’s presence [Code Grim. Pro., § 177]) was lawful and the search incident thereto proper.
Incisely put, the appeal presents the all-important question as to when the right of privacy shall be sacrificed in the interest of law enforcement. Put differently, the query is: Should we in the absence of any direct decision in this matter expand the protection given by Mapp v. Ohio (supra) to cover the precise facts in this case? No statute has been called to our attention nor have we been able to find any case specifically holding that the evidence in the instant case should be excluded on the ground that there was an unlawful search and seizure.
We note that on the one side we have the admirable purpose for which men established government — the right to be secure in their person and property. On the other, the very preservation of that society against the formidable forces of crime. The right of the individual embodied in the common-law principle that a man’s house is his castle, reaffirmed in the United States Constitution,[2] must be balanced against the rights of organized society in the welfare and protection of its people. While constitutional guarantees for the security of persons and property against searches and seizures will be liberally interpreted, a construction should not be indulged in which would defeat the reasonable and proper efforts to enforce the criminal law.
We must determine here whether there was any trespass by the police officer, and also whether evidence of criminality procured by such an act of trespass is to be rejected as incompetent. The question remains the identical question asked by *15 our Court of Appeals in the case of People v. Defore (242 N. Y. 13) at pages 24-25: “ The question is whether protection for the individual would not be gained at a disproportionate loss of protection for society. On the one side is the social need that crime shall be repressed. On the other, the social need that law shall not be flouted by the insolence of office. There are dangers in any choice.”
It is to be recalled that Mapp v. Ohio (367 U. S. 643, supra) reversed the law enunciated by People v. Defore (supra) which had controlled our State courts for over sis decades.
In determining whether or not the protection afforded defendants under Mapp v. Ohio (supra) should cover the facts in the case at bar, we must give careful consideration to the facts in Mapp v. Ohio. We recall that the evidence in Mapp v. Ohio was so revolting and bizarre that the Supreme Court was compelled to abandon the law heretofore enunciated by People v. Defore (supra). In determining whether the rationale of the decision in Mapp v. Ohio should be controlling in the case at bar, it is necessary to consider what Judge Crane said in Dougherty v. Equitable Life Assur. Soc. (266 N. Y. 71) at page 88: “ The language of any opinion must be confined to the facts before the court. No opinion is an authority beyond the point actually decided, and no judge can write freely if every sentence is to be taken as a rule of law separate from its association.”
The facts in this case do not show that the police officer was guilty of a trespass. We must be mindful of the fact that the conversations testified to by him could have been testified to by anyone who was in the store and who was within hearing distance of what transpired. If the police officer was not apprehensive that his presence in the store would have aroused the suspicion of the defendants, he would not have gone to the trouble of climbing to the roof and using the ladder in order to overhear the conversation. What a person can testify to by using his senses (sight and hearing) violates no law. To hold that this evidence is inadmissible is to say in effect that a person may use his business premises to violate the law with a canopy of protection to assure that prosecution is impossible. If we analyze what the police officer sought to obtain we realize that this could not essentially be obtained by obtaining a search and seizure warrant. What the police officer was trying to obtain was not the usual search and seizure. He would not have been able to obtain the evidence by a search and seizure. The police officer attempted to avoid suspicion and detection as a police officer so as to enable him to obtain the evidence which conclusively established the guilt of the defendants in this *16 cáse. We would be embarrassing the law-enforcement authorities in coping with their peculiar problems of criminal law enforcement, if we hold such evidence inadmissible.
Thus, balancing the rights of an individual against the interest of the public, how wide is the mantle of the Fourth Amendment? First, it does not cover a business establishment with the same degree of protection as that afforded a bona fide dwelling place (Davis v. United States, 328 U. S. 582 [1946]). The premises involved in the instant appeal are business premises.
Second, the blanket of protection falls short of the grounds surrounding a building (Davis v. United States, supra; Monnette v. United States, 299 F. 2d 847 [C. A. 5th, 1962]). As noted above, Officer Miltenberg was standing on the ladder which was based on a structure independent of the defendants ’ building.
Third, the fabric of protection has not been enlarged to embrace those eavesdropping devices and techniques of the electronic age which do not physically penetrate home or office. To constitute a violation of the Fourth Amendment there must be an unauthorized physical encroachment into the premises. In the situation before us, there was no actual physical intrusion by Officer Miltenberg — the ladder but rested against the wall of the store premises.
The Supreme Court of the United States, in the case of Lopez v. United States (373 U. S. 427, 440) decided May 27, 1963, laid down the following rule:
“ It is urged that whether or not the recording violated petitioner’s constitutional rights, we should prevent its introduction in evidence in this federal trial in the exercise of our supervisory powers. But the court’s inherent power to refuse to receive material evidence is a power that must be sparingly exercised. Its application in the present case, where there has been no manifestly improper conduct by federal officials, would be wholly unwarranted.
‘ ‘ The function of a criminal trial is to seek out and determine the truth or falsity of the charges brought against the defendant. Proper fulfillment of this function requires that, constitutional limitations aside, all relevant, competent evidence be admissible, unless the manner in which it has been obtained — for example, by violating some statute or rule of procedure — compels the formulation of a rule excluding its introduction in a federal court. See, e.g. McNabb v. United States, 318 U. S. 332; Mallory v. United States, 354 U. S. 449.
‘ ‘ When we look for the overriding considerations that might require the exclusion of the highly useful evidence involved here, *17 we find nothing. There has been no invasion of constitutionally protected rights, and no violation of federal law or rules of procedure. Indeed, there has not even been any electronic eavesdropping on a private conversation which government agents could not otherwise have overheard. There has, in short, been no act of any kind which could justify the creation of an exclusionary rule.” (Emphasis supplied.)
The danger in stating in theory a remedy for a concrete condition such as occurred in Mapp v. Ohio (supra) is that the theory is apt to run wild and outstrip the sound purpose which gave it life. If we adopt the old common-law rule protecting a man in his castle to cover the facts in this case, it would afford protection or authorization for anyone similarly situated to violate the law. The welfare and protection of law-abiding citizens should neither be sacrificed nor impaired by a construction of a statute or a decision of the Supreme Court of the United States designed to benefit rather than to work against the best interests of organized society.
An invasion or intrusion there must be, and the language of the amendment may not be magnified so “ as to forbid hearing or sight ” (Olmstead v. United States, 277 U. S. 438, 465). An amendment intended to protect the sanctity of a man’s home and the privacies of life from the abuses of executive authority should not be employed to afford persons suspected of crime of every possible opportunity to avoid detection (United States v. Frank, 151 F. Supp. 864 [U. S. Dist. Ct. Pa., 1956]).
In the case of People v. De Leo (12 N Y 2d 913) the Court of Appeals held that the testimony of a police officer who testified that he observed the defendants through an open skylight on the roof of the building containing the store in which the defendants were carrying on their activities, was admissible. It has been suggested that in view of the fact that the detective in this case had observed on two different occasions a man enter the empty store in question on the day preceding the arrest, and consequently the presence of the police officer there was lawful, distinguishes this case from the case at bar.
However, these circumstances do not distinguish the Be Leo case (supra) from the case at bar. We cannot overlook the fact that the testimony in the case at bar shows that the arresting officer on the day previous to the arrest had the premises under observation. He made his observation through a two-way mirror on the side of a panel truck parked in front of the premises, and the officer was concealed in the truck. For about an hour the police officer observed 14 unknown males enter the store and go directly through a door into the rear of the candy *18 store. As each of these people disappeared through the rear door, defendant Sidney Sperber would follow him into the rear. After a short time each of the unknown males would exit from the rear area and leave the premises, and as they left the store they were followed by defendant, who then entered a telephone booth after each interlude. The defendant was observed using the phone and then re-entering the front area of the store on each such occasion. It is therefore clear that in this case the police officer had a similar right to investigate the unusual activities occurring at this store, which was open to the public. If he obtained a search and seizure warrant when he entered this public store, he undoubtedly would have aroused the suspicion of the defendants. Thus it would have been impossible for him to obtain the evidence of the defendants’ criminal activities.
There can be no doubt that the Supreme Court of the United States has declared convictions obtained in the Federal courts and the State courts illegal on the ground of unlawful search and seizure. There has been a growing concern by the Supreme Court of the United States concerning the rights of defendants. Following the case of Matter of Lyons v. Goldstein (290 N. Y. 19), our State courts have been engulfed by proceedings in the nature of coram nobis attacking the convictions obtained throughout the entire State. The extent and nature of these proceedings have been so great that the law-enforcing authorities have been taxed to the utmost. Similarly, important rights recognized for the first time by our courts are mounting. The pendulum has swung in the direction of the protection of the defendants’ rights and the decisions of the Supreme Court of the United States and our own courts have revolutionized the detection and prosecution of crime. Accept the decisions of our courts we must, but in so doing, it does not require an intermediate appeals court or any trial court throughout the land to continually enlarge those rights and extend further protection to the defendants. The shield of our principles must defend us not only from the tyrannies of the government but from the villanies of the governed. There is an essential difference between arrest, search, seizure, detaining and questioning. There has never been an absolute prohibition against search and seizure.' The prohibition has been against an unreasonable search and seizure. In Mapp v. Ohio (supra, p. 659) the court wrote in part as follows: “Nor can it lightly be assumed that, as a practical matter, adoption of the exclusionary rule fetters law enforcement.” Aside from the dissenting Justices in that case, there is since this decision a growing conviction, among *19 experienced jurists, District Attorneys and law-enforcing authorities, that the burden of detection, arrest and conviction has been substantially increased. The law is not static and while we are required to follow the decisions of the court, we are not compelled to accept a fact when there is conclusive proof throughout the land that this theory is open to serious question.
Indictments returned and tried against defendants in the State of New York are entitled “ People of the State of New York vs. etc.” Out of the cascades of tears which have inundated the prosecution authorities in favor of defendants, we perhaps may be overlooking the fact that in order to protect the governed there must be a government strong enough to afford such protection. The protection of life and property is the prime concern of the entire government. Indeed, we must hearken back to the past and hear the small, still voice of Justice Cakdozo, writing in the case of Snyder v. Massachusetts (291 U. S. 97, 122) where he said: “ But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.”
Of course, the ends do not justify the means. The G-overnment, too, is subject to the Constitution and judicial integrity requires that every unjustified invasion upon the privacy of the individual be condemned. Nevertheless, the class of convictions affected by the Mapp ruling is not, as the court said, of “ relatively narrow compass ”. The number of State crimes presents a vastly different problem than is presented to Federal law-enforcement officers with respect to Federal crimes. In the year 1960 the criminal courts in but one county in this State, New York County, disposed of 132,072 felonies and misdemeanors. For the fiscal year 1960 the total number of defendants in criminal proceedings in all 87 United States District Courts in the 50 States and Puerto Rico was 35,017. But more significant that a comparison of the number of State crimes with Federal crimes is the nature of the crime and the means by which proceedings are initiated in the respective jurisdictions. Federal prosecutions are concerned for the most part with forgery, counterfeiting, embezzlement, and violation of the immigration and internal revenue laws. Prosecution in most cases follows upon long and intensive investigation by a department or agency and by a United States Attorney. The States, on the other hand, have to contend in large measure with crimes of violence. And prosecution originates with the cop on the beat. The State or city police officer does not have the time to deliberate as to whether a search meets constitutional requirements. He must act at the moment and if he does not do so, he fails in his duty *20 to the public. It is this fundamental difference between State and Federal law enforcement which mandates that the States not be strait-jacketed by narrow, technical, theoretical, legalistic concepts of judging searches and seizures.
Effective criminal investigation and law enforcement of the enormous body of State crime, as the Supreme Court has said, rests upon the States. Theirs is the duty in the first instance, while preserving the constitutional safeguards of the citizen, to protect society from the depredation of criminals. The State trial courts in the first case shall pass upon the question of reasonableness of a search. The Constitution, of course, does not define what are “unreasonable” searches, and no fixed formula exists to test “ reasonableness ”. But standards must be prescribed, simple, clear, workable rules, which will unfetter the investigation, detection and prosecution of crime and eliminate the confusion and demoralization of our police officers.
In this connection, attention must be called to the first application of the Mapp holding in Ker v. California, decided by the Supreme Court on June 10, 1963 (374 U. S. 23), where the court emphasized that State searches and seizures are to be judged by the same constitutional standards as apply in the Federal system. The court reiterated (pp. 33-34) that “ the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the ‘ fundamental criteria ’ laid down by the Fourth Amendment and in opinions of this Court applying that Amendment # * The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet ‘ the practical demands of effective criminal investigation and law enforcement ’ in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant comma,rid that evidence so seized is inadmissible against one who has standing to complain”. In this very opinion the majority of the court was evenly divided as to whether the requirement of reasonableness was violated by the California officers. Despite the fact, as Judge Harlan notes in his concurring opinion (p. 45), that the “ Court’s decisions in the realm of search and seizure are hardly notable for their predictability ”, we trust that the foregoing statement of the constitutional criteria applicable to this case will serve as guideposts for the future resolution of what constitutes unreasonable searches and seizures.
One concluding note, as indicative of the efforts of this State to meet the demands of law enforcement. Heretofore, to author *21 ize an arrest for a misdemeanor, the crime must have been attempted or committed in the officer’s presence. Effective as of July 1, 1963, a police officer may, without a warrant, arrest a person where he has reasonable grounds for believing that a crime is being committed in his presence (L. 1963, ch. 580, amdg. Code Crim. Pro., § 177). If there be probable cause to make an arrest, a search and seizure which follows will be upheld as valid (People v. Loria, 10 N Y 2d 368, 373, supra).
We hold that the evidence was improperly suppressed by the court below, that the order appealed from should be reversed, and that the case be remanded for trial.

. TJ. S. Const., 4th Arndt. “ Persons and houses to be secure from unreasonable searches and seizures. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” (And see N. Y. Const., art. I, § 12.)