Harold Birns, J.
I have serious doubts whether the arresting officer was lawfully in that section of the defendant’s premises wherein he allegedly overheard the incriminating separate conversations between the defendant and two unknown men and whereat he seized from the defendant the paper bearing notations of bets.
It has been established that the defendant was the proprietor of a bakery in the Yorkville section of Manhattan, at the front of which were tables for patrons, and at the rear was the kitchen or bakery, entered by means of a hallway. - Off this hallway was a washroom with a sign denominated ‘ ‘ Ladies Another washroom could be entered, but only through another room, the door to which it is now claimed was marked “ Private ” by a metal sign. This “ Private ” room was located on another side of the hallway, wherein cartons, soft drinks and foodstuffs were stored.
For some minutes prior to the arrest, the police officer had sat at a table in the bakery and observed unknown people on six different occasions disappear into the rear of the store followed by the defendant. Thereafter each of the six unknown men left the bakery.
Prior to entering the bakery, the police officer had learned of the second washroom and took the opportunity to station himself there. From this point of vantage, he testified to overhearing two men hold separate incriminating conversations concerning the placing of bets with the defendant, while in the room marked “ Private At the propitious moment he disclosed his presence and seized from the defendant a piece of paper bearing bets, now sought to be suppressed.
¡Since the officer did not possess a warrant for the arrest and search of this defendant, the lawfulness of his entry into the rear of the premises and his actions there can only be upheld upon a finding of “ probable cause
When the officer entered the second washroom, he had nothing more than mere suspicion, occasioned by observing the defend *591 ant going to the rear of the store with six unknown men. If this washroom was not a part of the public section of the store, this officer was a trespasser, and could not enter and seize without the lawful mandate required to justify such action in home or office. (Gouled v. United States, 255 U. S. 298; Lanza, v. New York, 370 U. S. 139.)
The defendant asserts that entry to the washroom could be obtained only through the door marked “Private”, and submitted proof that the door was so marked at the time of arrest. The arresting officer was unable to recall whether it was so marked. The People claim that because the other washroom is denominated “ Ladies ” the second washroom was for “ Men ”, and therefore the police officer was lawfully stationed in that room. Admittedly, the officer was not there for any hygienic purpose or necessity. He stationed himself there on the mere chance that he could eavesdrop and obtain evidence of a crime.
This case is unlike People v. Sperber (40 Misc 2d 13), relied upon by the District Attorney. In Sperber incriminating conversations were overheard by a police officer who, by standing on a ladder outside a rear window, overheard four men placing bets with the defendants in their candy store. There was no entry into the premises occupied by the defendants. The court (Appellate Term, 1st Dept.) by a majority held that there was no trespass at the time that evidence of criminality was procured. Here, the officer, as will be seen, had no legal right to be in that section of the bakery where he overheard the conversations which were alleged to establish defendant’s book-making activities.
Mere suspicion would not have provided a basis for a search warrant to enter a private home or office (Gouled v. United States, 255 U. S. 298, supra). Certainly the requirements for such entry cannot be less stringent where no warrant is obtained (Wong Sun v. United States, 371 U. S. 471).
The only lawful way in which the officer could have been in the second washroom was by consent or permission of this defendant or by legal right.
The New York City Building Code (Administrative Code, § C26-1279; Labor Law, § 381) provides that separate toilet facilities for the sexes shall be provided in office buildings, stores, warehouses, manufacturing establishments, and other structures where “workmen or workwomen ” are employed, In ‘ Places of public or semi-public assembly accommodating large numbers of persons”, the number of toilet facilities are within the discretion of the Building Department. The New York City Health Code (§ 87.05) provides that a restaurant ox-eating place may obtain its approval, and for such approval such *592 eating place or restaurant is required to submit the “ layout, the equipment to be used, its sanitation program, and such other information as the Department may require ”. Another section (§ 81.29) adopts the Building Code section referred to above concerning toilets for the separate and respective sexes in office buildings, etc.
The court’s attention has not been called to any statute or regulation which requires the maintenance of separate washrooms for men and women patrons of a restaurant or eating place or in premises such as that under consideration. Therefore, the court cannot draw the inference that since there was a room marked “ Ladies ” the other washroom was necessarily for male patrons; nor can the court find that the storage room which provided access to the second washroom was a “public room ”.
While it appears that the burden to establish illegality of the search claimed is on the defendant (People v. Loria, 24 A D 2d 116), nevertheless, consent to a search, or permission to search, must be established by clear and positive testimony (Judd v. United States, 190 F. 2d 649). Such testimony is lacking here.
Under the circumstances, I must conclude that the arresting officer was not lawfully in that portion of the premises where he overheard the conversation preceding the arrest.
It is basic constitutional law today that the Fourth Amendment may protect against the overhearing of a verbal statement as well as the more traditional seizure of papers and effects (Wong Sun v. United States, 371 U. S. 471, supra).
It is unnecessary to recite the number of cases since Mapp v. Ohio (367 U. S. 643) which have held that the constitutional requirements concerning unlawful search and seizure are now binding upon each State under the Fourteenth Amendment.
The motion to suppress is granted.