451 A.2d 245

**COMMONWEALTH of Pennsylvania**

**v.**

**Keith D. LOWERY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1982.

Filed Oct. 1, 1982.

68

John E. Nickoloff, Pittsburgh, for appellant.

Kenneth J. Benson, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before BROSKY, CIRILLO and POPOVICH, JJ.

BROSKY, Judge:

This is an appeal from a judgment of sentence. Appellant was convicted in a nonjury trial of possession of an unlawful substance, lysergic acid diethylamide (LSD), and sentenced to one year probation.

The trial court denied appellant's motions for a new trial and for arrest of judgment. First, it rejected appellant's claim that a police search of his bedroom with the consent of appellant's mother violated his Fourth Amendment right to privacy. Second, the court found that the mother voluntarily consented to the police search, and that the drugs seized during the search were therefore admissible as evidence. We affirm the decision of the trial court.

The standard of review concerning the findings of a suppression court is well-established. We must consider the evidence of the Commonwealth and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Silo,* 480 Pa. 15, 18, 389 A.2d 62, 63 (1978); *Commonwealth v. Harris,* 479 Pa. 131, 387 A.2d 869 (1978); *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). "Where the suppression court's findings are amply supported by the record they may not be disturbed on appeal." *Commonwealth v. O'Bryant,* 479 Pa. 534, 537, 388 A.2d 1059, 1061 (1978); *Commonwealth v. Bundy,* 458 Pa. 240, 328 A.2d 517 (1974).

The facts may be summarized as follows. At 11:15 p.m. on December 5, 1980, two police officers from the Pine-Marshall-Bradford Woods Police Department appeared at the home of Dr. and Mrs. Clinton A. Lowery, appellant's parents. Appellant was asleep in the basement at the time. The police told Mrs. Lowery they believed appellant had secreted approximately 100 squares of LSD in his bedroom bookshelf, and asked her permission to search the room. Explaining that she could refuse to allow the search, the police said they would obtain a search warrant if she did so. The police did not inform Mrs. Lowery that they had a search warrant in their possession at the time.

Mrs. Lowery said if there were any drugs in her residence, she wanted them out. After further discussion, she signed a consent warrant. The two officers and Mrs. Lowery proceeded to appellant's bedroom, where a search revealed 98 squares of LSD inside a book on a bookshelf. The officers then woke up appellant and arrested him.

Appellant contends that he had a reasonable expectation of privacy in his bedroom under the Fourth Amendment and was the only person who could have validly consented to its search. Since he did not consent, he argues, the evidence seized should have been suppressed at trial.

". . . Whether an individual is entitled to the protection of the fourth amendment 'depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Commonwealth v. Sell,* 288 Pa.Super. 371, 377, 432 A.2d 206, 210 (1981), citing *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), reh. den., 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979); *Commonwealth v. Karpinski,* 281 Pa.Super. 323, 422 A.2d 190 (1980).

The appellant claims a legitimate expectation of privacy in his bedroom based on his payment of $100 per month room and board, his subjective intent to exclude all others, and his claimed exclusive use of the room.

■ Property rights, actual usage, and historical distinctions are all used to determine whether the Fourth Amendment right to privacy applies. *Commonwealth v. Sell,* supra, 288 Pa.Super. at 377, 432 A.2d at 210. But . . . "in considering the reasonableness of asserted privacy expectations, . . . no single factor invariably will be determinative." *Rakas v. Illinois,* supra, 439 U.S. at 152, 99 S.Ct. at 435.

■ In general, to have a reasonable expectation of privacy, one must intend to exclude others and must exhibit that intent. *Commonwealth ex rel. Cabey v. Rundle,* 432 Pa. 466, 248 A.2d 197 (1968); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Furthermore, as most commonly expressed, the privacy test is twofold: the expectation must not only be "actual (subjective,)" but also one that "society is prepared to recognize as 'reasonable.'" *Katz,* supra, 389 U.S. at 360, 88 S.Ct. at 516 (Harlan, J., concurring).

■ Appellant argued that he had such an expectation as a rent-paying tenant. It is true that a landlord or lessor cannot consent to a search of a tenant's premises, regardless of the lessor's right to enter and inspect. *Commonwealth v. Berry,* 265 Pa.Super. 319, 401 A.2d 1230 (1979); *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

■ But the trial judge found that no landlord-tenant relationship existed here between appellant and his parents. In his opinion, he stated,

. . . the fact that the defendant agreed to pay his parents $100 a month board does not put him in the special relationship of landlord and tenant. Defendant was merely contributing (and not on an entirely regular basis) to the support of a household of which he was a member. Additionally, the defendant had full access to the entire house, not just to his bedroom. It is reasonable therefore to conclude that the defendant had no expectation of privacy that would exclude his mother from his bedroom.

"[I]n determining what is 'reasonable,' all surrounding facts and circumstances must be considered." *Commonwealth v. Latshaw,* 481 Pa. 298, 306, 392 A.2d 1301, 1305 (1978), cert. den., 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979). Applying that standard, we find the lower court's findings amply supported by the record.

The record indicates that Mrs. Lowery entered appellant's room for a number of purposes (closing windows, depositing clean laundry, inspecting for dirt). At no time did appellant ever protest her entry or forbid her or any other member of the family from entering his room. Appellant's door was open at the time police searched the room, and there was testimony that appellant never locked his door.

■ Overt indications of privacy expectation are not necessary in a strict landlord-tenant relationship because the expectation is understood by society. But cases dealing with search and seizure in a family setting emphasize the need for overt indications. *Commonwealth v. Reiland,* 241 Pa.Super. 109, 359 A.2d 811 (1976); *Commonwealth ex rel. Cabey v. Rundle,* supra.

In *Commonwealth v. Reiland,* supra, the court held that, with certain exceptions, a parent has the authority to consent to a search of his child's quarters in the parent's home. The one exception noted by the court, *People v. Nunn,* 55 Ill.2d 344, 304 N.E.2d 81 (1973), involved a 19-year-old boy who locked his bedroom and an adjoining kitchenette, and told his mother not to enter nor to allow anyone else to enter. There, the expectation of privacy had been manifested in a clear, overt manner.

In another case, *Commonwealth v. O'Neal,* 287 Pa.Super. 238, 429 A.2d 1189 (1980), the court relied on the objective manifestation test although no family relationship existed. The court found that the appellant, a gratuitous guest, had exhibited a legitimate expectation of privacy by keeping the doors to his room and closet closed. Therefore, it upheld his right to privacy. In our case, there is no evidence that the appellant ever objectively manifested an expectation of pri-

vacy. Given appellant's actual use of his room, his age, and the parent-child relationship involved, appellant did not have exclusive use and control of his bedroom as claimed.

■ The law is settled that a warrantless search may be made with the voluntary consent of a third party who possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 168, 172, 94 S.Ct. 988, 991, 993, 39 L.Ed.2d 242 (1974).

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock,* supra, 415 U.S. at 173, n.7, 94 S.Ct. at 993; *Commonwealth v. Garcia,* 478 Pa. 406, 387 A.2d 46 (1978).

■ Where such joint access or control exists, there can be no reasonable or legitimate expectation of privacy. *Latshaw,* supra.

■ Therefore, appellant's mother, as one having joint access and control, could validly consent to the search of the room by police, and the drugs seized were properly admitted as evidence at trial.

Appellant contends that because he was home when the police arrived, they should have requested *his* consent, not the mother's. Neither the Pennsylvania courts nor the United States Supreme Court have made such a distinction, and appellant does not present law from any other jurisdictions which is persuasive.

In the leading case of *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the court upheld a

third-party consent to search appellant's residence which had been given by appellant's common-law wife immediately after appellant was arrested in his front yard. The fact that appellant was available to give his consent did not seem to concern the court. Indeed, the law is clear that where two or more people have joint access and control over certain property, the voluntary consent of any of those people will provide the basis for a valid consensual search.

Appellant further contends that if his mother was empowered to consent to a search of his room, the consent was the result of police coercion and hence was invalid. We disagree and affirm the decision of the lower court on that issue.

■ To be effective, a consent to search must be voluntarily given with a total absence of duress or coercion, express or implied. *Commonwealth v. Harris,* 429 Pa. 215, 221, 239 A.2d 290, 293 (1968); *Commonwealth v. Pichel,* 229 Pa.Super. 103, 323 A.2d 113 (1974).

No one factor is determinative in a voluntariness inquiry. ... It is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. It is this careful sifting of the unique facts and circumstances of each case that is evidenced in our prior decisions involving consent searches.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 233, 93 S.Ct. 2041, 2050, 36 L.Ed.2d 854 (1973).

■ Mrs. Lowery's willingness to allow the search was amply demonstrated by her statement that if any drugs were in the house, she wanted them out. She was fully informed of her rights before signing the consent form and exhibited no reluctance to permit the search. Given those facts, her consent was voluntary. Therefore, the evidence obtained was lawfully seized and admitted into evidence.

Judgment of sentence affirmed.