486 A.2d 987

**COMMONWEALTH of Pennsylvania**

v.

**Stefan CIHYLIK, Appellant.**

Superior Court of Pennsylvania.

Argued May 24, 1984.

Filed Jan. 4, 1985.

---

Richard D. Atkins, Philadelphia, for appellant.

Donald B. Corriere, District Attorney, Easton, for Commonwealth, appellee.

Before DEL SOLE, MONTEMURO and HOFFMAN, JJ.

HOFFMAN, Judge:

The issue on appeal is whether appellant had a legitimate expectation of privacy in the contents of a garbage pit located beside a barn on a leased lot so as to warrant suppression of evidence seized by police in a trespassory warrantless search. We hold that appellant had no such privacy expectation and, accordingly, affirm.

Based upon the lower court's findings of fact and the record, the relevant facts are as follows: On January 22, 1981, appellant became the lessee of a lot located at the southeast corner of Eighth Street and Beil Alley in North-ampton County, Pennsylvania. According to the terms of the lease, the premises were to be used for non-commercial purposes and appellant was to pay for all utilities. Upon the lot was a woodframe barn measuring approximately 20 feet by 40 feet with a single locked door at the front, no windows, and a sheet metal roof punctuated by two large exhaust vents. Near one side of the barn was an open pit comprised of a hollow metal drum or tub planted in the ground to a depth of about four feet. Although this pit was clearly observable from both Eighth Street and Beil Alley, its contents were not visible from either street. The lot was grassy, overgrown with weeds and dirt patches, and was not fenced or enclosed in any way. The lot was surrounded closely by alleys and neighboring buildings.

On January 15, 1982, Patrolman Richard Fenstermaker of the Northampton Borough Police Department received information regarding alleged suspicious activities at this lot based upon an unusual amount of traffic in the area. On February 28, 1982, Officer Fenstermaker, along with Officers Robert Benson and Howard George, began periodic surveillance of the barn and surrounding area. On March 5, Officer Benson observed appellant exit the front of the barn carrying some dried plants or weeds and throw the vegetation into the open pit. Appellant then left the premises. That evening, Officer Fenstermaker returned to the lot and, upon approaching the pit, observed dried clippings of what appeared to be marijuana plants lying atop some

garbage. He took several of these clippings and returned to police headquarters, where the material was "field tested" and positively identified as marijuana. Officer Fenstermaker returned to the lot and took photographs of the pit contents. At this point in time, a "more earnest surveillance" was established. Over the next two months, appellant was observed sixteen times at the barn, and, each time, appellant would immediately lock the door upon entering and exiting the barn. Officers Benson and Fenstermaker also took electrical and water readings from meters attached to an exterior wall of the barn and visible from adjoining property. These readings, covering the period from March 1981 through March 1982, revealed that extremely high amounts of water and electricity were being consumed for an uninhabited building.

Based upon the above information, a warrant was obtained on May 19, 1982, to search for marijuana plants, other controlled substances, and any related paraphernalia or instruments used in the growing or manufacture of such items. As a result of the May 19 search conducted in appellant's presence, 344 immature marijuana plants were seized from the barn. The total weight of the dried leaves and stems when stripped from the plants was 11.9 pounds.

Appellant was arrested and charged with unlawful possession of a controlled substance (marijuana) and possession with intent to deliver a controlled substance (marijuana). On December 7, 1982, after making findings of fact and conclusions of law, the lower court denied appellant's motion to suppress the physical evidence seized by police and impounded the record of the suppression hearing. On December 15, appellant waived jury trial and the lower court found him guilty on both counts. Appellant then waived his rights to file post-verdict motions and to a pre-sentence investigation report. He was subsequently sentenced to (1) a term of five years probation and a $5,000 fine plus prosecution costs on the possession with intent to deliver charge, (2) a concurrent term of one year probation plus costs on the possession charge, and (3) community service

226

as a volunteer at the Northampton County Prison for a minimum of twelve hours per month during the first year of probation. This appeal followed.[1]

Appellant contends that Officer Fenstermaker's trespassory and warrantless search and seizure of the marijuana clippings from his pit was unreasonable because neither probable cause nor exigent circumstances existed. He therefore argues that the marijuana plants seized in the subsequent search of the barn pursuant to a warrant should have been suppressed as the fruit of the prior illegal search of the pit. The Commonwealth, on the other hand, argues that appellant had no reasonable expectation of privacy in the clippings which he had abandoned.

"The Fourth Amendment does not prohibit warrantless searches, but rather unreasonable searches. The reasonableness of a search depends upon the facts and circumstances of the particular case, considered in the context of established Constitutional principles." *United States v. Samuels*, 374 F.Supp. 684, 685 (E.D.Pa.1974). *See also Ker v. California*, 374 U.S. 23, 33, 83 S.Ct. 1623, 1629, 10 L.Ed.2d 726 (1963); *Commonwealth v. Weimer*, 262 Pa.Superior Ct. 69, 74–75, 396 A.2d 649, 651–652 (1978) (*en banc*). In Pennsylvania, "the burden is upon the Commonwealth to prove by a preponderance of the evidence that a search or seizure did not violate the fourth amendment." *Commonwealth v. Silo*, 480 Pa. 15, 21, 389 A.2d 62, 65 (1978). It is now well-recognized that, in order to challenge successfully a warrantless search, the challenger must have a legitimate expectation of privacy in the area or property searched:

> For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as

1. Upon receiving the notice of appeal to the Superior Court from the December 15, 1982 order, the lower court filed a Pa.R.A.P. 1925(a) opinion on January 20, 1983, in which it relied upon its December 15 opinion, dealing with appellant's suppression motion, to support its order.

private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States,* 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (citations omitted). This privacy test is twofold: "the expectation must not only be 'actual (subjective),' but also one that 'society is prepared to recognize as reasonable.'" *Commonwealth v. Lowery,* 305 Pa. Superior Ct. 66, 71, 451 A.2d 245, 247 (1982), *quoting Katz v. United States, supra* 389 U.S. at 361, 88 S.Ct. at 516 (HARLAN, J., concurring). *Accord, Commonwealth v. Tann,* 500 Pa. 593, 599, 459 A.2d 322, 325 (1983). In *Commonwealth v. Sell,* 288 Pa.Superior Ct. 371, 432 A.2d 206 (1981), this Court stated:

> The controlling consideration, therefore, is whether the individual contesting the search and seizure entertains a legitimate expectation of privacy in the premises or area searched.

> \*     \*     \*     \*     \*     \*

> Moreover, in deciding the legitimacy of an accused's asserted privacy expectation, no single factor is determinative.... "Obviously, however, a 'legitimate' expectation of privacy by definition means more than a subjective expectation of not being discovered.... Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." ... Thus, the Supreme Court has considered whether the individual claiming the protection of the fourth amendment took ordinary precautions to insure his privacy, ..., and has examined the manner in which an individual has used a particular location.... Finally, as the Court recognized in *Rakas [v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ], principles of property law reflect society's express recognition of an individual's authority to conduct himself as he desires in certain areas and, while not controlling, "should be considered in determin-

ing whether an individual's expectations of privacy are reasonable." ...

*Id.*, 288 Pa.Superior Ct. at 378–79, 432 A.2d at 210–211 (citations omitted). *Accord, Commonwealth v. Lowery, supra* 305 Pa.Superior Ct. at 71, 451 A.2d at 247 ("Property rights, actual usage, and historical distinctions are all used to determine whether the Fourth Amendment right to privacy applies.").

■ It is also well-established that "no one has a standing to complain of a search and seizure of property that he has voluntarily abandoned." *Commonwealth v. Shoatz,* 469 Pa. 545, 553, 366 A.2d 1216, 1220 (1976). "The determination of whether or not there has been an abandonment of property is an ultimate fact, dependent upon the purported act of abandonment and the manifested intent of the person alleged to have abandoned the property." *Commonwealth v. Sero,* 478 Pa. 440, 452, 387 A.2d 63, 69 (1978). "The test for abandonment is whether the complaining party could retain a reasonable expectation of privacy in the property allegedly abandoned." *Id.* In *Commonwealth v. Minton,* 288 Pa.Superior Ct. 381, 432 A.2d 212 (1981), this Court held that "placing trash for collection is an act of abandonment which terminates any fourth amendment protection." *Id.,* 288 Pa.Superior Ct. at 391, 432 A.2d at 217. In *Minton,* police removed a large plastic trash bag sitting at the curb side directly in front of the defendant's residence and discovered marijuana residue in the bag. *See also United States v. Reicherter,* 647 F.2d 397, 399 (3d Cir.1981) ("Every circuit considering the issue has concluded that no reasonable expectation of privacy exists once trash has been placed in a public area for collection"; such trash has been abandoned).

■ In the instant case, after reviewing the photographs taken of the contents of the pit and the testimony on the record, we think it is clear that the pit was used by appellant as a garbage dump and that it was left open and accessible to anyone crossing the lot. The Commonwealth also presented a video tape of the area in question which

showed the close proximity of the surrounding structures and the fact that the general area was used as a playground by children. Although appellant did not put this garbage in a bag on the edge of his lot for collection, we believe that the instant case is still analogous to the above-cited trash cases because appellant's actions also evidenced an intent to abandon the contents of the pit. There is no indication that appellant ever retrieved any of the contents of the pit or ever approached the pit except to throw things in. Additionally, and more importantly, our conclusion that appellant did not have a legitimate expectation of privacy in the contents of the pit is bolstered by the following circumstances:

> Firstly, the pit was completely open having no lid or other cover signifying an attempt to hide its contents from inspection. Secondly, there were no fences, gates or other enclosures designed to prevent access to the pit. Thirdly, the defendant's conduct in leaving the premises without removing the marijuana clippings from the pit or taking ordinary measures to conceal them hardly manifests a legitimate expectation of privacy. Fourthly, defendant had always been very careful to secure the barn from the public. Yet, he did not display such an attitude with the clippings leaving them on top of garbage which was accessible to the public.

(Lower Court Opinion at 6–7). Accordingly, even assuming that appellant had an *actual* expectation of privacy, we concur with the lower court's finding as follows:

> Given the wide-open appearance of the pit, its location in an unfenced yard, the easy access provided by an adjoining public alley, and the proximity of other homes, we find the defendant's expectation of privacy for this outside area is not one which society is prepared to recognize as reasonable.

(Lower Court Opinion at 7).

Appellant argues, however, that he had a reasonable expectation of privacy in the contents of the pit because

they were seized from within the constitutionally protected "curtilage" of the barn.

> The Fourth Amendment provides for "the right of the people to be secure in their persons, houses, papers and effects." The word "houses" in the Fourth Amendment has been extended by the Courts to include the curtilage.... Thus, the enclosed area surrounding a dwelling place is part of the protected premises.

*United States v. Wolfe,* 375 F.Supp. 949, 958 (E.D.Pa.1974) (citations omitted).[2] "Not every object near or attached to a dwelling is entitled to Fourth Amendment protection." *United States v. Romano,* 388 F.Supp. 101, 104 (E.D.Pa. 1975). "Whether a given area is within the protected curtilage of one's dwelling depends upon a number of factors, including its proximity to the dwelling, whether it is within the enclosure surrounding the dwelling, and its use as an adjunct to the domestic economy of the family." *United States v. Minker,* 312 F.2d 632, 634 (3d Cir.1962), *cert. denied,* 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963). *See, e.g., id.* (outside trash receptacle for multi-tenanted apartment building was not within curtilage of second floor tenant's dwelling); *United States v. Romano, supra* (drain-pipe attached to rear wall of townhouse-student residence in which defendant lived was not within curtilage); *but see Commonwealth v. Eshelman,* 477 Pa. 93, 383 A.2d 838 (1978) (old Cadillac sitting behind defendant's house near the edge of the woods was within the curtilage).

However, in defining curtilage, the courts have made a distinction between dwelling houses and business offices:

2. In *United States v. Romano,* 388 F.Supp. 101 (E.D.Pa.1975), the court explained the derivation of the word "curtilage" as follows:

> The word curtilage is derived from the Latin cohors (a place enclosed around a yard) and the old French cortilliage or courtillage which today has been corrupted into courtyard. Originally it referred to the land and outbuildings immediately adjacent to a castle that were in turn surrounded by a high stone wall.... Today its meaning has been extended to include any land or building immediately adjacent to a dwelling. Usually it is enclosed some way by a fence or shrub.

*Id.* at 104 n. 4 (citations omitted).

Curtilage, discussed above, means a small piece of land, not necessarily enclosed, around a dwelling house and generally includes buildings used for domestic purposes in the conduct of family affairs; the term has no application to any building not used as a dwelling....

Whereas, the term "house" within the Fourth Amendment may include a business office or store, ... the concept of curtilage does not apply to buildings other than dwellings.... Thus, the backyard of the defendant's business premises would not be afforded the same protection as part of the curtilage of a dwelling.

*United States v. Wolfe, supra* at 958–59 (citations omitted). *See also Monnette v. United States,* 299 F.2d 847, 851 n. 6 (5th Cir.1962); *United States v. Hayden,* 140 F.Supp. 429, 435 (D.Md.1956); *United States v. Vlahos,* 19 F.Supp. 166, 170 (D.Or.1937); *People v. Sperber,* 40 Misc.2d 13, 242 N.Y.S.2d 652, *aff'd,* 15 N.Y.2d 566, 254 N.Y.S.2d 538, 203 N.E.2d 219 (1964). "Thus, it may be concluded that the Fourth Amendment does not cover a business establishment with the same degree of protection against warrantless searches and seizures as that afforded a bona fide dwelling." *United States v. Wolfe, supra* at 959.[3]

Here, we reject appellant's assertion that the pit area constituted "curtilage". Although the pit was situated close to the building and the lot appeared to be surrounded by residential dwellings, we cannot accept appellant's claim that the building was his "dwelling". As we have noted, the structure had air vents on the metal roof, no windows, and only one entrance. Moreover, there is no indication that appellant used the place as a residence, visiting it only sixteen times over a two-month period. The building was obviously a barn used for nonresidential purposes. Therefore, because the police trespass was not an intrusion into a constitutionally protected area, Officer Fenstermaker's mere viewing of the contents of the pit, which was open to

3. In *Wolfe,* the court denied a motion to suppress where an FBI agent went into the alleyway behind the defendant's business offices and removed a cardboard carton from the trash located in the backyard without a search warrant.

view, did not constitute a search prohibited by the Fourth Amendment. *See Commonwealth v. Weimer*, 262 Pa.Superior Ct. 69, 73–74, 396 A.2d 649, 650–651 (1978) (*en banc*); *Commonwealth v. Adams*, 234 Pa.Superior Ct. 475, 481, 341 A.2d 206, 209 (1975).

Additionally, we agree with the lower court that the instant case is better analyzed "on the basis of defendant's expectation of privacy rather than a property concept of curtilage." (Lower Court Opinion at 8). *Accord, United States v. Minker, supra* at 634 ("factors of paramount importance in considering a Fourth Amendment claim are the nature of the individual's interest in and the extent of the claimed privacy of the premises searched"); *United States v. Romano, supra* at 105 (because the Fourth Amendment protects people, not places, "the scope of protection should be based upon the degree of privacy an individual should reasonably expect rather than the venerable concept of curtilage").

Appellant also argues that the police trespass onto his lot constituted an unreasonable search. We disagree and find analogous support in the "open fields" cases. The term "open fields" has been defined as "privately owned grounds or outbuildings which are not located in close proximity to the owner's dwelling." *Commonwealth v. Robbins*, 216 Pa.Superior Ct. 233, 235, 263 A.2d 761, 762 (1970) (HOFFMAN, J., concurring); *Commonwealth v. Wagner*, 69 D. & C.2d 560, 563 (Lebanon Co.1974). In the landmark case of *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), the United States Supreme Court held that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields." *Id.* at 59, 44 S.Ct. at 446. In *Hester*, revenue officers went to the house of the accused's father without a warrant and, concealing themselves approximately 50–100 yards away, saw the accused hand a quart bottle to another man. In the subsequent foot pursuit, the accused and the other man dropped a jug and a bottle, which the agents seized when the men abandoned

them and which were discovered to contain illegal moonshine whiskey. In affirming judgment, the Court held that, even if the agents had trespassed, their testimony was not obtained by an illegal search and seizure and should therefore be allowed.

This Court followed *Hester* in *Commonwealth v. Janek*, 242 Pa.Superior Ct. 340, 363 A.2d 1299 (1976). In *Janek*, the field in question belonged to the defendant's mother; contained a tent, various gardening implements, approximately 200 live marijuana plants and a can of fertilizer; was not visible from the nearest public road; and was posted with "No Tresspassing" signs. Police, who were unlawfully on the property, arrested the defendant and his companion as they were leaving the field. We held, in part, that under *Hester*, the police were justifiably in a position to observe the illegal acts and to seize the marijuana and gardening implements. *See also Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976) (defendant had no standing to challenge police search and seizure of murder victim's body from a shallow grave in a wooded area separated by a fence and 148 yards from the backyard of a small farmhouse owned by a third party); *Commonwealth v. Metzger*, 295 Pa.Superior Ct. 267, 441 A.2d 1225 (1982) (where corpse of murder victim was found in a shallow grave in a grassy field approximately 200 feet behind the farm house rented by defendant and his girlfriend, court held that there was no Fourth Amendment protection in open fields).

More recently, in *Commonwealth v. Beals*, 313 Pa.Superior Ct. 346, 459 A.2d 1263 (1983), an informant told a state narcotics agent that he had observed marijuana plants growing on the defendant's land and took the agent to the property to show the area in which he had seen the growing marijuana, but their actual view of the plants was obstructed by woodland. Two days later, the agent and another agent went upon a neighbor's lands with permission but were still unable to see the clearing because of surrounding trees. They observed "No Trespassing" signs but, nevertheless, entered the woods on the defendant's land. Thus,

they were able to observe 350–400 marijuana plants growing in the cleared space among the trees. The day after, the agents circled over the clearing in a state police helicopter at a height of 200 feet and, with the assistance of binoculars, were able to observe the growing marijuana plants and take aerial photographs. They then obtained a search warrant and consequently seized 81 grams of marijuana and remnants of several marijuana plants. In reversing an order suppressing the evidence, this Court noted that "[o]pen fields generally are not considered areas subject to a reasonable expectation of privacy." *Id.*, 313 Pa.Superior Ct. at 353, 459 A.2d at 1266. We reasoned that the field was located 1170 feet from the dwelling and was not visible therefrom, and consisted of cleared space surrounded on all sides by woodland. *Id.*, 313 Pa.Superior Ct. at 354, 459 A.2d at 1267. We also stated that the trespass on the defendant's land did not of itself constitute an illegal search but was only a factor to consider in determining the reasonableness of the visual intrusion. *Id.*, 313 Pa.Superior Ct. at 352, 459 A.2d at 1266.

■ Clearly, the instant area in question, which was only about 10 feet from one side of the barn, differs from the fields in the above-cited cases which were situated some distance from the houses. Therefore, we cannot hold that the portion of the lot containing the garbage pit constituted an "open field" as that term has been judicially defined and applied. However, we note that the courts in the "open fields" cases upheld a government trespass to obtain incriminating evidence because the area intruded upon was not an area considered subject to a reasonable expectation of privacy. Similarly, here, we find that the police officer's intrusion onto appellant's lot to look at the pit does not warrant suppression because appellant did not have a reasonable expectation of privacy in the open, exposed area containing the pit.

■ Having concluded that appellant had no legitimate expectation of privacy in the items seized from the pit, we hold that the marijuana seized during the subsequent

search of the barn pursuant to a valid warrant was properly admitted into evidence.

Judgment of sentence affirmed.