## UNITED STATES v. OLSON.
### No. 20900.

District Court, W. D. Kentucky,
Louisville Division.

Nov. 1, 1941.

Eli H. Brown, III, U. S. Atty., and Malcom P. Wallace, Asst. U. S. Atty., both of Louisville, Ky., for plaintiff.

John Huffaker and J. Paul Keith, Jr., both of Louisville, Ky., for defendant.

MILLER, District Judge.

The defendant is charged by the two counts of the information with hunting and killing wild ducks from a powerboat on December 1, 1940, contrary to the provisions of Sections 703 and 704, Title 16 U. S.C.A., and the regulations issued thereunder by the Secretary of the Interior. The defendant contends that the craft he was using at the time was not a powerboat.

Section 703, Title 16 U.S.C.A., provides that except as permitted by regulations it shall be unlawful at any time, by any means or in any manner, to hunt or kill any migratory bird included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds and the United States and the United Mexican States for the protection of migratory birds. Section 704, Title 16 U.S.C.A., authorizes and directs the Secretary of the Interior to adopt suitable regulations permitting and governing the hunting and killing of such birds. Regulation 3, in dealing with the means by which migratory birds may be taken, provides " * * * they may be taken during the open season from land or water, with the aid of a dog, and from a blind, boat, or floating craft except sinkbox (battery), powerboat, sailboat, any boat under sail, and any craft or device of any kind towed by powerboat or sailboat; but nothing herein shall permit the taking of migratory game birds from or by means, aid, or use of an automobile or aircraft of any kind." The evidence showed that the defendant on the day in question was proceeding up the

Ohio River near West Point, Kentucky, in a small boat propelled by an outboard motor. Shortly after passing the witnesses and having reached a point some quarter of a mile beyond them and out of their sight, the defendant fired three shots at ducks passing over him, killing one. The defendant immediately paddled the boat out into the river to pick up the duck he had killed. The outboard motor was not running but was still attached to the rear of the boat with its propeller lifted up and clear of the water. The defendant's testimony, which we accept for the facts of the case, was that the motor had been turned off for some two or three minutes before the shooting and that he had been engaged in loosening the bolts which attached the motor to the boat for the purpose of completely detaching the motor and placing it in the boat, all in preparation of flushing some ducks a considerable distance away across the river; that the ducks in question flew overhead quite unexpectedly from another direction and that he fired the shots in question before the motor had been completely detached from the boat.

■■■ Counsel for both the government and the defendant have been unable to find any reported case deciding the point involved. It would seem plain that a "powerboat" means a boat which is propelled by power other than man-power. It will be noticed that the regulation permits the use of "floating craft" but prohibits the use of a sailboat or a towed boat as well as a powerboat. There can be no question but that a boat operated by an outboard motor is a powerboat within the prohibition of the regulation. The only real question presented is whether or not it has ceased to be a powerboat by turning off the motor and raising the propeller clear of the water. When that has been done it has ceased to be propelled at the time by power, but since it is still capable of being propelled by power by merely lowering the propeller into the water and starting the engine again it would seem that it still retains its classification of a powerboat. A gasoline engine launch or any larger powerboat with engine permanently attached does not cease to be a powerboat when the engine is turned off. It would probably still be considered as a powerboat even if

the engine had run out of gasoline and could not be operated without putting an additional supply obtained from a reserve container into the tank. It seems to me that the real purpose of the statute is to prohibit hunting and shooting from a designated kind of craft, regardless of whether it be moving or standing still at the particular time. The fundamental purpose of the statutes and the regulations thereunder, namely, the protection of migratory birds from destruction in an unequal contest between the hunter and the bird, would be largely defeated if a hunter is permitted to change the classification of his craft back and forth almost at will and with the lapsing of only a few moments of time and effort. I am advised that the Fish and Wildlife Service of the Division of Game Management permits the hunting of migratory birds in such a boat as was used by the defendant in this case when and if the motor has been completely detached from the stern and placed within the boat. This no doubt is for the purpose of permitting the hunter to use a motor in going to the general location where he intends to hunt and to return home therefrom after the hunting is over. This is no doubt a reasonable and sensible interpretation of the regulation, but the purpose behind this relaxation of a strict interpretation of the regulation does not authorize any further extension. The facts in the present case do not bring it within this limited exception. Although it was the purpose of the defendant to change his boat from a powerboat to a floating craft, that purpose had not been carried out. On the contrary it was temporarily abandoned before the change had taken place, while the defendant engaged in shooting and retrieving the killed duck.

■■ I believe that in the present case there was no preconceived intention to violate the regulation and that the violations which occurred arose out of an unexpected situation which failed to give the defendant time in which to realize that he might be committing an offense. Although this is to be considered in assessing the fine, it does not relieve against the technical commission of the offense. United States v. Schultze, D.C.W.D.Ky., 28 F.Supp. 234. The fine is fixed at $5, defendant to pay the costs of this action.