**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank SORCE, James Falco, Thomas Malloy, Defendants-Appellants.**

No. 14087.

United States Court of Appeals
Seventh Circuit.

Nov. 1, 1963.

Rehearing Denied Dec. 9, 1963.
Certiorari Denied Feb. 24, 1964.
See 84 S.Ct. 701.

James P. O'Brien, John Peter Lulinski, John Powers Crowley, Raymond K. Berg, Chicago, Ill., for appellee.

Before DUFFY, KILEY, and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

Defendants were convicted by the District Court, without a jury, of "unlawfully, wilfully and knowingly hav[ing] in their possession" seven camping tents stolen from an interstate shipment, knowing the tents to have been stolen.[1] They have appealed.

A trailer loaded with freight shipped from Missouri and bound for New York was stolen in Chicago on April 20, 1962. It was found three days later with most of the freight gone. On May 8, 1962, government agents arrested the defendants, charging them with possession of the seven tents identified as part of the stolen freight.

The District Court, at the trial, denied defendants' timely motion to suppress the tents as evidence against them on the grounds that the tents were fruit of an unlawful search and seizure. Defendants claim error.

The arresting agents knew that merchandise, including camp tents, consigned by Hawthorne Finishing Company in New Haven, Missouri, to Sears, Roebuck in Buffalo, New York, had been stolen. They saw an "old model dark blue Chevrolet truck" backed up to a large open door of a building on the Blue Top Turkey Farm. They saw Falco and Malloy loading the truck with cardboard cartons. The truck, driven by Falco, left the farm accompanied by a Pontiac in which Sorce and Malloy were riding. Both vehicles were driven into Ten Acre Garden Center. The agents drove by the Center three or four times, and saw Sorce, Falco and Malloy unloading the cartons from the truck, stripping the cartons from the merchandise and

George F. Callaghan, Anna R. Lavin, Chicago, Ill., for appellants.

1. 18 U.S.C. § 659 provides, so far as material here, that if goods moving as part of an interstate shipment of freight are stolen, "[w]hoever * * * has in his possession any such goods * * * knowing the same to have been * * * stolen" is guilty of an offense.

burning the cartons. The merchandise was put on the ground and Malloy was putting some of it in a shed.

The agents entered the Center, an open air nursery selling plants and shrubs. One agent saw, "clearly visible," that the cartons were addressed to Sears, Roebuck in Buffalo, New York, from the Hawthorne Finishing Company, and saw the labels "J. C. Higgins Camp Tents." The agents, without warrant, arrested the defendants and seized the merchandise.

The principal question is whether there was "probable cause" for the arrest of defendants to support the subsequent search that produced the evidence on which this conviction rests. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

■ We see no merit in defendants' contention that their arrest followed an unlawful search and seizure. In Lee v. United States, 98 U.S.App.D.C. 97, 232 F.2d 354 (1956), the "testimony shows that the guns were seized before the arrest" after an entry into Lee's home without warrant and with "compulsion." The testimony does not show here, as in Lee, that the arrest followed the search. The agents here observed, arrested and seized almost at once. At best for the defendants the "arrest, the search, and the seizure were all one transaction." Martin v. United States, 155 F.2d 503 (5th Cir. 1946).

■ The agents' entry into an "open air nursery" was not unlawful. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), Martin v. United States, 155 F.2d 503 (5th Cir. 1946), Monnette v. United States, 299 F.2d 847 (5th Cir. 1962). They did observe before entry, but this was no violation of privacy. The protection of the Fourth Amendment does not extend to "open fields," Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924), nor to "[e]nclosed or unenclosed grounds * * * around * * * houses," Martin v. United States, 155 F. 2d 503, 505 (5th Cir. 1946).

■ After their entry the agents observed the names and addresses on the cartons and made the arrest. Having seen the cartons with reasonable grounds for believing they were stolen goods, the agents reasonably could believe they were observing the commission of a crime which justified the arrest without a warrant. Martin v. United States, 155 F.2d 503, 505 (5th Cir. 1946). This distinguishes Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), where the cartons were not identified until after the arrest.

■ Defendants argue that the agents should have obtained a warrant after gaining the knowledge they had before entry. We think the agents were not unreasonable in acting when they did. If they had gone for a search warrant it is probable that the burning of the cartons would have destroyed the identifying marks. See Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ We think prudent men in the shoes of the agents would have seen enough to permit them to believe that defendants were violating the law. This is the test of legality of the arrest, which in turn is determinative of the legality of a search incident to such arrest. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

■ Defendants claim prejudice in the District Court's limitation of cross-examination of the government's principal witness on the question of their arrest and the search and seizure. We see no error in the restriction of cross-examination with respect to surveillance on dates not covered by direct. This had to do with events weeks before the arrest, search or seizure question and is unimportant on that question.

■ The witness testified that his superior showed him photocopies of the bills of lading covering the shipments of the stolen goods. Defense attorney sought production of the documents and declined the government's offer to produce the "identical" originals which were

readily available. The court denied the motion to have the photocopies produced. It later developed on cross-examination that the witness' information as to the contents of the documents was told him by his superior and he did not know what the documents showed as to details. We cannot see any error in that ruling of the court.

■ We see no error either in the introduction of exhibits 8 and 9, bills of lading showing the interstate character of the stolen shipment.[2] The questions raised by the defendants do not go to the admissibility of the documents but to the weight of the testimony of the witnesses who identified the exhibits.[3] And we think there was proof otherwise that the tents in evidence were part of that interstate shipment.

■ The indictment charged the camping tents had been stolen from "Trans-American Trailer No. 3063 located at Cermak Road and Throop Street, Chicago, Illinois," while "under the care, custody, control and possession of the Trans-American Freight Lines," and at which time the goods were "in the course of transportation, to wit, from Terminal Freight Cooperative Association, Chicago, Illinois, to the State of New York." This was sufficient to inform the defendants of the charge against them. The proof that the shipment was from Missouri through Chicago to New York was not inconsistent with this charge. We see no merit to defendants' contention that there was a fatal variance between the indictment and the proof.

■ Finally it is claimed that the necessary possession and scienter were not proven. The testimony as to what the agents saw on May 8 at the Turkey Farm and the Garden Center, coupled with false exculpatory statements made by Falco and Malloy concerning their presence at the Garden Center, is sufficient to prove both elements. The evidence here is far different from that found insufficient to prove Saponaro had possession in United States v. Minieri, 303 F.2d 550, 557 (2d Cir. 1962), or to prove DiVito and Blandi had possession or guilty knowledge in United States v. Carengella, 198 F.2d 3, 7 (7th Cir. 1952).

The convictions are affirmed.

---

2. 18 U.S.C. § 659 provides in part:
    "To establish the interstate * * * character of any shipment in any prosecution under this section the waybill or other shipping document of such shipment shall be prima facie evidence of the place from which and to which such shipment was made."

3. 28 U.S.C. § 1732 provides that once the document is shown to have been made in the regular course of business it shall be admissible.
    "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."