**Bryce McDOWELL et al., Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18650.**

United States Court of Appeals
Eighth Circuit.

Sept. 27, 1967.

---

Gerald L. Reade and Ramon A. Roubideaux, Fort Pierre, S. D., for appellants; Roubideaux, Poches & Reade, Fort Pierre, S. D., with them on brief.

Ronald E. Clabaugh, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; Harold C. Doyle, U. S. Atty., Sioux Falls, S. D., with him on brief.

Before MEHAFFY and GIBSON, Circuit Judges and STEPHENSON, District Judge.

STEPHENSON, District Judge.

The appellants were indicted by a federal grand jury in Sioux Falls, South Dakota, on the 3rd day of March, 1966, and therein charged with hunting or attempting to hunt migratory game birds over a baited area in violation of Regulation 10.3(b) (9) of Title 50, Code of Federal Regulations,[1] as promulgated by the Secretary of the Interior pursuant to 16 U.S.C. § 704. On jury trial of the cause, all twenty-three defendants were found

1. § 10.3 Hunting methods.—The provisions of this section shall govern the methods by which any person may take migratory game birds on which open seasons are prescribed in this part.

(b) Prohibited methods.—Migratory game birds may not be taken—

(9) By the aid of baiting, or on or over any baited area. As used in this subparagraph, "baiting" shall mean the placing, exposing, depositing, distributing or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt or other feed so as to constitute for such birds a lure, attraction or enticement to, on or over any area where hunters are attempting to take them; and "baited area" means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed or scattered. However, nothing in this subparagraph shall prohibit:

(i) The taking of all migratory game birds, including waterfowl, on or over standing crops, flooded standing crops (including aquatics), flooded harvested crop lands, grain crops properly shocked or the field where grown, or grains found scattered solely as the result of normal agricultural planting or harvesting; and

(ii) the taking of all migratory game birds, except waterfowl, on or over any lands where shelled, shucked, or unshucked corn, wheat or other grain, salt or other feed has been distributed or scattered solely as the result of valid agricultural operations or procedures.

guilty and penalties were imposed by the court in accordance with 16 U.S.C. § 707.[2] Of the original twenty-three defendants, twenty-one participate in this appeal.

The facts are basically as follows: Appellant Bryce McDowell operated a 3000 acre farm or ranch adjacent to the Big Bend Reservoir, a federal game preserve. Mr. McDowell closed off the area with "no hunting" and "no trespassing" signs, but for a set fee would allow hunters to hunt geese and ducks on his property. In corn fields south and north of the farmhouse about one-half mile Mr. McDowell had dug pits for the use of the hunters and provided them with decoys. There was also located within the purview of both fields standing or unharvested millet.

Federal game agents, after receiving complaints of baiting on the McDowell farm, went to a position near the above fields and undertook a day and night surveillance thereof. The agents maintained this surveillance from November 17, 1965 until December 7, 1965. On several occasions, November 22, 29, and December 2, 1965, the agents observed at night what they considered unusual activities in the fields and entered thereon to investigate. On these occasions Mr. McDowell was observed in the north and south fields with a tractor. Examining the fields closer the agents found small amounts of the standing millet had been cut and kernels of shelled corn had been scattered six to eight inches apart on top of the snow. The agents took samples of the millet and corn, which were admitted as evidence in the trial. On at least one occasion, November 27, 1965, the agents observed hunting in these fields, but took no action at that time. On December 7, 1965, the agents observed twenty-two hunters enter the farm and take their places in goose pits, with about one-half of the group in the south field and the other half in the north field. The agents observed the hunters in the south field shoot at and kill one goose and immediately thereafter proceeded to enter the farm area where they confiscated the dead goose, took the names and gun numbers of the individual hunters, took pictures in the fields, and gathered corn samples. No arrests were made at the time, but the hunters and Mr. McDowell were indicted in March 1966, as noted above.

It is undisputed that at no time during the period in question did the federal game agents have a search warrant or express consent when they entered upon the land of Mr. McDowell.

Prior to trial the appellants moved to suppress any and all pictures and physical evidence seized by the agents on or about November 22, 1965 to December 7, 1965, on the grounds that the seizures occurred under circumstances amounting to an illegal search and seizure in violation of the Fourth Amendment of the United States Constitution and Article VI, Section 11 of the South Dakota Constitution. The trial court denied appellant's motion, and appellants now assert the denial of their motion as error and urge reversal of their convictions.

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Although Article VI, Section 11 of the South Dakota Constitution[3] is merely

---

2. All defendants received fines in the amount of $100, except Kenneth Manning, Jr., $250 fine, and George A. Falk, $500 fine. Bryce McDowell, who was the possessor of the fields in question and controlled the hunting thereon, was convicted in the same action of aiding and abetting the hunters and received a six month suspended sentence and a two-year probation with a $500 fine.

3. Article VI, Section 11, of the South Dakota Constitution provides as follows: The right of the people to be secure in their persons, houses, papers and ef-

a restatement of the above, we are dealing here with federal enforcement of a federal statute, and, therefore, federal case law is deemed controlling on the points in issue. United States v. Hassell, 336 F.2d 684 (6th Cir. 1964), cert. denied, 380 U.S. 965, 85 S.Ct. 1111, 14 L.Ed.2d 155 (1965).

■ Under federal law the search of open fields without a search warrant is not constitutionally "unreasonable." Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1926). This is true even though entrance to the area searched was gained by trespass. Hester v. United States, supra; Giacona v. United States, 257 F.2d 450 (5th Cir. 1958), cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958). These principles have been reiterated in this Circuit, Stark v. United States, 44 F.2d 946 (8th Cir. 1930), and in those of the various other circuits. United States v. Hassell, supra; United States v. Sorce, 325 F.2d 84 (7th Cir. 1963), cert. denied, 376 U.S. 931 84 S.Ct. 701, 11 L.Ed.2d 651 (1964); Giacona v. United States, supra; Care v. United States, 231 F.2d 22 (10th Cir. 1956), cert. denied, 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956); Koth v. United States, 16 F.2d 59 (9th Cir. 1926.)

■ While it is well established that the protection of the Fourth Amendment extends to the curtilage, at no time was the dwelling of appellant Bryce McDowell, or the curtilage surrounding that dwelling, invaded for the purposes of a search. It cannot be seriously contended the open fields in question were a part of the curtilage. The fields were clearly separated from the farm buildings of Mr. McDowell and about one-quarter to one-half mile distant therefrom. As stated in Care v. United States, supra, 231 F.2d at 25:

> Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family.

See also Hodges v. United States, 243 F.2d 281 (5th Cir. 1957). The only time the federal game agents were within the curtilage of the farm buildings of Mr. McDowell, as determined from the factors outlined above, was on December 7, 1965. At that time the agents merely recorded the names of those persons coming out of the north field and visually observed their clothing. This did not constitute a search, Fagundes v. United States, 340 F.2d 673, 676 (1st Cir. 1965) and no seizures for the purposes of obtaining evidence took place within the curtilage.

■ The contention of appellants that the fields were entitled to the protection of the Fourth Amendment as being within the curtilage of a commercial enterprise is without merit. Although the Supreme Court has recently expanded the Fourth Amendment protection of the business enterprise, See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), it has not expanded such protection beyond that which a private dwelling and the curtilage thereof is likelise entitled. Therefore, a search of open fields, without a search warrant, even if such fields are construed as part of a commercial enterprise, is not constitutionally "unreasonable."

■ The trial court properly denied appellants' motion to suppress.[4]

---

fects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized.

4. Although apparently not raised below, appellees in their brief additionally urge that all of the appellants, except Bryce McDowell, lack standing to object to the search and seizure on December 7, 1965, because their conviction did not flow from the possession of the land or the possession of the kernels of corn gathered and offered in evidence. However, the evidence discloses that all of the appellants were legally upon the premises and the

Appellants next contend that the trial court erred in denying appellants' motions for judgments of acquittal on the grounds of entrapment of appellants by the United States government agents. This contention is without foundation in the record before us.

 Unlawful entrapment has been defined as the "solicitation of an otherwise innocent person to commit a crime solely for the purpose of prosecution." Rogers v. United States, 367 F.2d 998, 1001 (8th Cir. 1966), cert. denied, 386 U.S. 943, 87 S.Ct. 976, 17 L.Ed.2d 874 (1967). It occurs only when the criminal conduct was the result of "creative activity" on the part of law-enforcement officers. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). The record here is absolutely void of any evidence that the federal game agents solicited, inspired, incited, persuaded, or otherwise prompted the appellants to bait the fields in question or hunt over the baited fields. On the contrary, the agents maintained a completely passive role merely observing the fields in question, and at no time did "creative activity" on their part contribute to the violation of which appellants were convicted. Therefore, the trial court properly denied appellants' motions for judgments of acquittal. There was no evidence to justify the defense of entrapment.

As their final ground for reversal, appellants contend the trial court erred in denying appellants' motion to strike all evidence and testimony with reference to baiting in the north field for failure of the government to show beyond a reasonable doubt that the millet was there under conditions other than normal agricultural procedures.

 The evidence relating to the north field was clearly admissible as tending to show an element of the offense charged. Viewing this evidence in the light most favorable to the government

as we must do, Anderson v. United States, 369 F.2d 11 (8th Cir. 1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967), we cannot say as a matter of law the evidence was insufficient to raise a jury question. It was, therefore, for the jury to determine whether the government had proved beyond a reasonable doubt that the north field had been baited, and the trial court properly denied appellants' motion to strike.

We have considered all of the contentions of appellants and find them to be without merit.

The case is affirmed.

---

fruits of the search were used against them. We therefore consider that they had standing to object to the search. Jones v. United States, 362 U.S. 257, 80

S.Ct. 725, 4 L.Ed.2d 697 (1960); Spinelli v. United States, 8th Cir., July 31, 1967, 382 F.2d 871.