454 F.2d 1285
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald E. CAIN et al., Defendants-Appellants.
 No. 71-1249.
 United States Court of Appeals,
Seventh Circuit.
 Jan. 10, 1972.
 
 Louis G. Horman, Metropolis, Ill., John L. Oliver, Jr., Cape Girardeau, Mo., for defendants-appellants.
 Henry A. Schwarz, U. S. Atty., Jeffrey F. Arbetman and Ronald A. Lebowitz, Asst. U. S. Attys., for plaintiff-appellee.
 Before DUFFY, Senior Circuit Judge, and KERNER and PELL, Circuit Judges.*
 DUFFY, Senior Circuit Judge.
 
 
 1
 The four defendants herein were charged with violation of the Migratory Bird Treaty Act, Sec. 703, Title 16, U.S. C., and a regulation promulgated thereunder, 50 C.F.R., Sec. 10.3(b) (9).
 
 
 2
 Section 703 provides: "(I)t shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill . . ." or to ". . . attempt to take, capture, or kill . . . any migratory bird. . . ." 50 C.F.R. Sec. 10.3(b) (9) provides that: ". . . migratory birds may not be taken: . . . (9) By the aid of baiting or on or over any baited area."
 
 
 3
 50 C.F.R., Sec. 10.3(b) (9) prohibits the "placing, . . . distributing, or scattering of shelled, shucked, or unshucked corn, wheat, or other grain . . . so as to constitute for such birds a lure, attraction, or enticement to, on or over any area where hunters are attempting to take them. . . ."Defendants asked for a jury trial which was denied. Their motions to suppress the evidence were also denied. A bench trial was held in the District Court and defendants were each found guilty and fined $50 a piece.
 
 
 4
 Defendant, Gerald Cain, owns 300 acres of farm land in Union County, Illinois. The farm is immediately north of the Union County State and Game Preserve being in a "U" shape with the State Refuge on three sides, east, south and west. Corn (80 acres), wheat (5 acres) and soybeans were grown on the farm. In 1969, a portion of the farm was operated as a commercial hunting club known as Grassey Lake Hunting Club.
 
 
 5
 The Club portion of the farm had fourteen goose hunting pits laid out in parallel lines east and west. The Club operated by defendant Collin L. Cain was licensed by the State of Illinois for wild goose hunting. Apparently it was a profitable undertaking as defendants claim they lost $3000 during the nineday period when the Club was closed.
 
 
 6
 On November 17, 1969, at approximately 3 p. m., United States Game Management Agents, Ralph Purinton and Miles Camery, entered the grounds of the Hunting Club pursuant to a routine supervisory procedure to insure that all hunting ceased at the proper time-3 p. m. After their entry, they arrived at a pond.
 
 
 7
 The pond is located about the center of the Hunting Club's grounds. There was a corn field on one side and a winter wheat field on the other. The size of the pond was about a quarter of an acre. There was an area of the corn field about 20 yards wide and 60 yards long where the corn had been knocked down and was left on the ground. Ears of corn were visible in the water and the slough area adjacent to the pond. The shore of the pond adjacent to the wheat field was strewn with wheat with some of the wheat lying in the water. A dam had been constructed in the cornfield to dam the pond and it, too was strewn with wheat. A duck blind was located fifteen yards west of the pond.
 
 
 8
 The following day, agent Purinton returned with Game Management Agent Bosak. Bosak testified that corn lay in the water "in heavy amounts," saying that there were approximately 36 ears of corn in one area of 15 feet.
 
 
 9
 Defendants Collin L. Cain, Boyd and Bishop were found in duck blinds in the vicinity of the pond. The area was declared "baited" and the Club was closed for a period of ten days.
 
 
 10
 Defendants argue that the Government did not prove any violation of 50 C.F.R. Sec. 10.3(b) (9). However, this section prohibits the ". . . taking or attempting to take, by use of baiting. . . ." We hold there was sufficient proof of attempting to take wild fowl by use of baiting.
 
 
 11
 Defendants urge that the searches conducted by Government agents were a violation of defendants' right to be free from unreasonable searches as provided by the Fourth Amendment. It is not disputed that the agents did not have search warrants.
 
 
 12
 On November 18, Gerald Cain, the owner of the farm, was told by Agent Purinton that ". . . we desire to inspect the area for the possibility of bait, and asked him if he would like to come with him and he answered, no, that he would come back to the clubhouse."
 
 
 13
 The decision in McDowell v. United States, 383 F.2d 599 (8 Cir. 1967), is pertinent in several respects. That Court stated on page 603:
 
 
 14
 "Under federal law the search of open fields without a search warrant is not constitutionally 'unreasonable.' Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1926). This is true even though entrance to the area searched was gained by trespass."
 
 
 15
 Defendants argue See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L. Ed.2d 943 (1967) supports their contention that a warrant was required to search their hunting club which, they contend, qualified as a "licensed commercial enterprise."
 
 
 16
 In interpreting See, supra, the Court, in McDowell, supra, said at page 603 of 383 F.2d:
 
 
 17
 "Although the Supreme Court has recently expanded the Fourth Amendment protection of the business enterprise, See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), it has not expanded such protection beyond that which a private dwelling and the curtilage thereof is likewise entitled. Therefore, a search of open fields, without a search warrant, even if such fields are construed as part of a commercial enterprise, is not constitutionally 'unreasonable."'
 
 
 18
 This Court, in United States v. Sorce, 325 F.2d 84 (7 Cir., 1963), concluded that a mere trespassatory entry on to open land did not vitiate an otherwise lawful search. We there stated on page 86:
 
 
 19
 "The agents' entry into an 'open air nursery' was not unlawful. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), Martin v. United States, 155 F.2d 503 (5th Cir. 1946), Monnette v. United States, 299 F.2d 847 (5th Cir. 1962). They did observe before entry, but this was no violation of privacy. The protection of the Fourth Amendment does not extend to 'open fields,' Hester v. United States . . . nor to '[e]nclosed, or unenclosed grounds * * * around * * * houses,' Martin v. United States. . . ."
 
 
 20
 We hold the searches of the agents were not invalid because the agents had not obtained search warrants.
 
 
 21
 The remaining issue before us is whether it was error for the Court to deny the request of the defendants for a jury trial.
 
 
 22
 The defendants argue that the District Court committed error when it denied their motions for a jury trial. It is true that nearly thirty years ago, the Fifth Circuit in Smith v. United States, 128 F.2d 990 (5 Cir., 1942), did hold that a similar denial was reversible error ". . . for the reason that Congress has not conferred upon the district courts jurisdiction to try petty criminal offenses without a jury." However, we think more recent decisions of the United States Supreme Court compel a different ruling on the right to a jury trial for petty offenses.[1]
 
 
 23
 Title 16 U.S.C. Sec. 707 provides that anyone who violates any of sections 703-711 of said Title or any regulations made pursuant thereto ". . . shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $500 or be imprisoned not more than six months, or both."
 
 
 24
 In Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the defendant was convicted of a misdemeanor under state law punishable by a maximum of two years in prison and a $300 fine. The defendant was sentenced to 60 days in jail and fined $150. The Supreme Court held that a crime punishable by a possible 2 years' imprisonment is a serious crime and that defendant was entitled to a jury trial. The Supreme Court distinguished such a serious crime from petty offenses stating at page 159 at page 1453 of 88 S.Ct. of its opinion:
 
 
 25
 "It is doubtless true that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision . . . Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses, Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966)."
 
 
 26
 In Baldwin v. New York, 399 U.S. 66, 68, 90 S.Ct. 1886, 1887, 26 L.Ed.2d 437 (1970), the Supreme Court stated: "In Duncan v. Louisiana, 391 U.S. 145, [88 S.Ct. 1444, 20 L.Ed.2d 491] (1968), we held that the Sixth Amendment, as applied to the States through the Fourteenth, requires that defendants accused of serious crimes be afforded the right to trial by jury. We also reaffirmed the long-established view that so-called 'petty offenses' may be tried without a jury."
 
 
 27
 We think the statement of the Supreme Court in Baldwin, supra, on page 73, 90 S.Ct. on page 1890 is significant and should not be ignored:
 
 
 28
 "Where the accused cannot possibly face more than six months' imprisonment, we have held that these disadvantages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications."
 
 
 29
 In Baldwin, supra, the Supreme Court further stated at page 68, at page 90 S. Ct. 1888:
 
 
 30
 ". . . In deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense, District of Columbia v. Clawans, 300 U.S. 617, 628, [57 S.Ct. 660, 663, 81 L.Ed. 843] (1937), and we have found the most relevant such criteria in the severity of the maximum authorized penalty. Frank v. United States, 395 U.S. 147, 148, [89 S.Ct. 1503, 1505, 23 L.Ed.2d 162] (1969); Duncan v. Louisiana, supra, [391 U.S.] at 159-161, [88 S.Ct. 1444, at 1452-1454]; District of Columbia v. Clawans, supra, [300 U.S.] at 628, [57 S.Ct. 660, 663]. Applying these guidelines, we have held that a possible six-month penalty is short enough to permit classification of the offense as 'petty,' Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 220, [88 S.Ct. 1472, 1475, 20 L.Ed.2d 538] (1968); Cheff v. Schnackenberg, 384 U.S. 373 [86 S.Ct. 1523, 16 L.Ed.2d 629] (1966). . . ."
 
 
 31
 Inasmuch as the maximum penalty which could have been imposed upon the defendants in the instant case was six months, and the maximum fine which could have been imposed was $500, we have concluded, pursuant to rulings of the United States Supreme Court, that the defendants herein were not entitled to have a jury trial.
 
 
 32
 We hold that the judgment and sentence imposed by the District Court should be and is
 
 
 33
 Affirmed.
 
 
 
 *
 Judge Kerner heard oral argument, but did not participate in the adoption of this opinion
 
 
 [1]
 District of Columbia v. Colts, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930); District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed. 2d 437 (1970)