**UNITED STATES of America**

v.

**Elmer P. SWANN, aka Paul Elmer Swann.**

**Crim. No. 73–0497–M.**

United States District Court,
D. Maryland.

July 1, 1974.

George Beall, U. S. Atty., and Michael E. Marr, Asst. U. S. Atty., Baltimore, Md., for plaintiff-appellee.

William E. Seekford, Towson, Md., for defendant-appellant.

MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

This case is before the court pursuant to Rule 8 of the Federal Rules of Procedure for the Trial of Minor Offenses before United States Magistrates, as the result of an appeal by defendant from his conviction on September 12, 1973, by Magistrate Clarence E. Goetz, upon the charge of aiding and abetting the taking or attempted taking of migratory waterfowl with the aid of bait, in violation of Title 16 U.S.C. §§ 703, 711, 50 C.F.R. § 10.21(j); 18 U.S.C. § 2. The offense is

a petty offense. 16 U.S.C. § 707; 18 U.S.C. § 1(3).

Neither the appellant nor the appellee has requested a hearing and the case will therefore be decided upon the memoranda which have been submitted by counsel and upon the record of the proceedings before the magistrate.

The testimony disclosed that appellant was employed by his father as a worker on a farm in Talbot County, hereinafter referred to as the Swann Farm, which was leased from the owner by appellant's father and used for farming and commercial hunting. On October 23, 1972, Special Agent Lawrence M. Thurmond of the United States Fish and Wildlife Service flew over the Swann Farm on a routine aerial observation flight and noticed what he concluded to be a bright strip of corn near a new pond on the farm. After photographing the pond and the strip of corn from the air, Agent Thurmond and another special agent went to the Swann Farm at approximately 7 p. m. that day. They entered the property through a field and went to the pond where, with the aid of a flashlight, they observed a strip of yellow whole-grained shelled corn. Agent Thurmond stepped off the strip and estimated it to be approximately 35 yards long, one foot wide, and up to six inches in depth in some places. He took two handfuls of corn from the ground and left.

On October 25, 1972, Agent Thurmond returned to the Swann Farm and, having again gained access to the pond through the field, observed what appeared to be the same corn in lesser quantities. At approximately 3 p. m., on October 27, 1972, Agent Thurmond flew over the Swann Farm at an altitude of approximately 300 feet and observed some corn still remaining on the ground near the pond.

On November 1, 1972, the opening day of the hunting season, Agent Thurmond and two other agents heard shots coming from the Swann Farm and, at approximately 7:10 a. m., they drove onto the property. The agents encountered appellant standing near a truck in front of one of the farm outbuildings and asked him where the hunters were. Appellant directed them to the new pond where the hunters and a guide were found in three hunting pits around the new pond. Agent Thurmond testified that he advised appellant of his *Miranda* rights by reading from a card supplied him by the United States Fish and Wildlife Service. According to Agent Thurmond, appellant stated that he understood his rights and,. in response to a question, stated that he had put the corn out near the pond. Appellant further stated that at that time, according to Agent Thurmond's testimony, it was done to lure and attract the birds to the new pond and that he put the corn out 10 days before the season opened on November 1, 1972. Agent Thurmond testified that the appellant stated at the scene that he was unaware that the corn had to be completely removed 10 days prior to the opening of the season.

The corn which Agent Thurmond had taken from the Swann Farm on October 23, 1972, was received as evidence over the objection of the appellant. No search warrant had been obtained for a search of the Swann Farm on any of the occasions when Agent Thurmond entered onto the farm.

■■ Appellant claims that the entry of Agent Thurmond onto the farm on October 23, 1972, and the seizure of the corn constituted a violation of the Fourth Amendment and that the evidence and all fruits thereof should have been suppressed. The evidence disclosed clearly that the pond was in a field several hundred yards from the barns and outbuildings which were utilized in the farming operation. While the barns were a part of the curtilage, the "open fields" around the barns were not. United States v. Brown, 487 F.2d 208 (4th Cir. 1973), cert. denied 416 U.S. 987, 94 S.Ct. 1617, 40 L.Ed.2d 114 (1974). Under the "open fields" doctrine of Hester v. United States, 265 U. S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1925),

a trespass does not, of itself, constitute an illegal search. The open fields around the barns not being an area constitutionally protected against a warrantless search, there was no "search" in this case within the meaning of the Fourth Amendment.

Appellant argues, however, that even if not required by the Fourth Amendment, a warrant was required by 16 U.S.C. § 706 which states in part:

"Any employee of the Department of the Interior authorized by the Secretary of the Interior to enforce the provisions of sections 703–711 of this title . . . shall have authority, with a search warrant, to search any place. The several judges of the courts established under the laws of the United States, and United States commissioners may, within their respective jurisdictions, upon proper oath or affirmation showing probable cause, issue warrants in all such cases."

It is true that the Tenth Circuit has held that 16 U.S.C. § 706, by implication, withholds from special enforcement agents the power to make a warrantless search on probable cause. Aiuppa v. United States, 338 F.2d 146 (10th Cir. 1964). In Aiuppa, however, the search was made in the nighttime of an automobile located upon the premises which constituted defendant's home, and was not made by consent nor incident to a lawful arrest. Under such circumstances, the Fourth Amendment clearly required a search warrant to be obtained prior to the search irrespective of the provisions of 16 U.S.C. § 706. Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Bradshaw, 490 F.2d 1097 (4th Cir. 1974). In other words, under the factual circumstances in Aiuppa, the requirements of 16 U.S.C. § 706 did not create a warrant requirement where none existed under the Fourth Amendment but, on the contrary, reinforced the warrant requirement which existed independently by virtue of the Fourth Amendment.

Other courts have held that federal game wardens are not constitutionally prohibited by the Fourth Amendment from searching open fields without a search warrant and that evidence gained thereby is admissible in the prosecution for violation of provisions of the Migratory Bird Treaty Act irrespective of the search warrant clause of § 706. McDowell v. United States, 383 F.2d 599 (8th Cir. 1967); United States v. Cain, 454 F.2d 1285 (7th Cir. 1972).

This court does not believe it reasonable or logical to hold that § 706 was intended to create a requirement for a warrant to be issued prior to a search when one would not have been required under the Fourth Amendment.

On the last point, there was evidence from which the magistrate could have found that corn was placed near the new pond on the Swann Farm within 10 days of the opening of the season on November 1, 1972, for the purpose of attracting geese and other migratory birds thereto; that appellant placed the corn thereon with knowledge of its purpose; that appellant was aware that the Swann Farm, and the pond in particular, would be hunted on opening day, November 1, 1972, and that he assisted in the preparations for and the directions to the hunters who were to hunt at the pond for migratory birds on November 1, 1972. The evidence was sufficient to allow the magistrate to make the above findings beyond a reasonable doubt.

Title 16 U.S.C. § 703 makes it unlawful to "attempt to take" any migratory bird in violation of the regulations established under the Migratory Bird Treaty and the Migratory Bird Treaty Act. One of the regulations so adopted, then 50 C.F.R. § 10.21(j), prohibited the taking of migratory game birds:

"By the aid of baiting, or on or over any baited area. As used in this paragraph, 'baiting' shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn . . .

**1308**

so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and 'baited area' means any area where . . . corn . . . is directly or indirectly placed, exposed, deposited, distributed, or scattered; and such area shall remain a baited area for 10 days following *complete removal* of all such corn . . . . ."

 The magistrate, from the evidence, could have found beyond a reasonable doubt that the appellant knowingly assisted in the performance of acts which were in violation of the regulations for the purpose of assisting persons to hunt under conditions which were in violation of the regulations. While mere association with the principal or mere presence at the scene of the crime are themselves insufficient to establish guilt as an aider and abettor, the acts which the magistrate could have found beyond a reasonable doubt from the evidence that the appellant committed were more than mere passive acts but were, on the contrary, affirmative acts necessary for the commission of the crime charged.

The court, sitting in an appellate capacity from the judgment of a United States magistrate, does not determine whether the evidence convinces the court of guilt beyond a reasonable doubt, but rather whether there is substantial evidence, taken in the light most favorable to the United States, which tends to show that the defendant is guilty beyond a reasonable doubt. United States v. Sherman, 421 F.2d 198, 199–200 (4th Cir. 1970), cert. denied, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970); United States v. Quarles, 387 F.2d 551 (4th Cir. 1967); Rule 8(d) Federal Rules of Procedure for the Trial of Minor Offenses before United States Magistrates. Ample evidence existed to support the verdict of the magistrate.

No point was made before the magistrate or in this court of the fate of the principals of whom the appellant was found to be an aider and abettor. However, an aider and abettor may be tried before the principal and where the commission of a crime is proved, an aider and abettor may be tried even if the principal is unknown. United States v. Shuford, 454 F.2d 772 (4th Cir. 1971).

For all these reasons, it is this 1st day of July, 1974, by the United States District Court for the District of Maryland,

Ordered that the judgment of the magistrate herein is hereby affirmed.